UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELIVERY KICK HOLDINGS, INC.,

    Plaintiff,

v.                                                                          Case No: 8:24-cv-1506-KKM-NHA

RJ BROOKSER LLC, and RILEY
BROOKSHER,

    Defendants.
_____

## ORDER

Defendants RJ Brooksher, LLC, and RJ Brooksher (an individual and the sole member of RJ Brooksher, LLC) move to dismiss plaintiff Delivery Kick Holdings, Inc., (DKH)'s amended complaint, or in the alternative move for a more definite statement. Motion to Dismiss (Doc. 21) (MTD); Am. Compl. (Doc. 11). For the reasons below, I grant the motion in part and deny it in part.

I.    BACKGROUND[1]

DKH is a Florida corporation that was formed in 2023 by Nicolas Kimball and Brooksher to develop and host a mobile food delivery application. Am. Compl. ¶¶ 1, 7. In

---

[1] I accept the amended complaint's factual allegations as true and construe them in the light most favorable to DKH. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

December 2022, Kimball hired Brooksher to develop software unrelated to this action and to consult on the development of the food delivery application at issue. *Id.* ¶ 8. Brooksher is the sole member of co-defendant RJ Brooksher, LLC (RJB). *Id.* ¶ 2.

Prior to forming DKH, Kimball developed prototype software for a food delivery application. *Id.* ¶ 7. The first software was used to "scrape" data from the Internet and assemble it in a database to be used with the application. *Id.* In January 2023, after development by coding contractors hired by Kimball, the prototype version of the application became operable. *Id.* ¶ 9. Kimball owned both the scraping software and the database developed in conjunction with the application, and he stored them on secure repositories. *Id.* ¶ 10. In 2023, Brooksher began testing the software that was being developed by contractors for bugs, as well as assembling it, but did not author that software. *Id.* ¶ 14.

"In April 2023, Kimball and Brooksher agree[d] to form DKH." *Id.* ¶ 15. Kimball would own 75% of the company and Brooksher would own 25%. *Id.* "Brooksher was informed of the need for secrecy of the software under development and was provided . . . passwords to access repositories for testing the software." *Id.* ¶ 16. Although Kimball and Brooksher prepared a formal operating agreement for DKH, neither executed it. *Id.* ¶ 17. Thereafter, Brooksher invoiced DKH at half his normal rate in exchange for not financially investing in DKH at the time and executed contracts as though he were the

2

Chief Technical Officer of DKH. *Id.* DKH owned the software equitably and by assignment from Kimball. *Id.* ¶ 18. On December 5, 2023, Kimball registered the website for DKH. *Id.* ¶ 19.

Starting around May 2024, Brooksher started deleting source code and the database associated with the application from DKH's servers, right before DKH was preparing to launch the application on the Apple App Store. *Id.* ¶¶ 20–21. In late May, Brooksher filed a copyright application for the application, calling it the "RJ Brooksher LLC Food Delivery Application." *Id.* ¶ 22. Brooksher subsequently notified DKH of the termination of his relationship with the company and asserted that he was owner of the food delivery application. *Id.* ¶ 23. DKH then filed this suit, claiming violations of the Defend Trade Secrets Act (DTSA), the Florida Uniform Trade Secrets Act (FUTSA), the Computer Fraud and Abuse Act (CFAA), and civil conversion, fraud, and breach of fiduciary duty under Florida law. Am. Compl. ¶¶ 24–71.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and

3

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III. ANALYSIS

The defendants move to dismiss all counts, lodging many arguments with cursory legal analysis. I address each in turn.

### A. Counts I & II: Trade Secret Misappropriation

To state a claim under the DTSA or FUTSA,[2] the plaintiff must allege that "(1) it possessed a trade secret and (2) the secret was misappropriated." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1310 (11th Cir. 2020) (quoting *Yellowfin Yachts, Inc. v. Barker*

---

[2] Because the DTSA "largely mirrors" the FUTSA, and the parties also assume as much, I address them jointly. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13. (11th Cir. 2020).

*Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018)); *see* § 688.002, Fla. Stat. A trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 10 So. 3d 202, 205 (Fla. 4th DCA 2009) (quoting § 688.002(4), Fla. Stat.). Entering into written confidentiality agreements, restricting access to the trade secrets, and requiring the destruction of any copies of confidential materials are examples of reasonable measures to protect trade secrets. *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 809 n.1 (Fla. 3d DCA 2014). For the FUTSA claim, "[w]hen there is no express agreement, the party seeking protection must establish the existence of a 'confidential relationship giving rise to an implied obligation not to use or disclose' a trade secret." *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1372 (Fed. Cir. 2021) (applying Florida law) (alterations adopted) (quoting *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983)).

Misappropriation can occur by "acquisition, disclosure, or use." *Compulife Software Inc.*, 959 F.3d at 1311; *see* § 688.002(2), Fla. Stat. Misappropriation by acquisition requires that the defendant "knows or has reason to know that the trade secret was acquired by improper means." *Compulife Software Inc.*, 959 F.3d at 1311 (quoting § 688.002(2)(a), Fla. Stat.). Under the DTSA, the person bringing the civil action for misappropriation must be the "owner" of the trade secret. *See* 18 U.S.C. § 1836(b)(1). "Owner" is defined as "the

5

person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." *Highland Consulting Grp., Inc. v. Minjares*, 74 F.4th 1352, 1358 (11th Cir. 2023) (quoting 18 U.S.C. § 1839(4)).

The defendants move to dismiss DKH's trade secret misappropriation claims based on insufficient allegations of ownership and possession of the purported trade secrets; that DKH took reasonable steps to protect the secrecy of the trade secrets; and that there was a confidential relationship between DKH and the defendants. MTD at 7–10. The defendants also contend that the Copyright Act preempts the trade secret misappropriation claims. *Id.* at 10–11. The defendants' arguments fail.

As a threshold matter, DKH alleges sufficient facts showing ownership and possession. To the extent that "possession" is a requirement under the FUTSA, the defendants do not explain why housing the trade secrets on DKH's servers fails to render it plausible that DKH possessed the trade secrets. Am. Compl. ¶¶ 12–14, 21. Regarding ownership under the DTSA, DKH alleges that it became the "equitable owner" "by assignment" of the trade secrets after the trade secrets were initially created on Kimball's servers. *Id.* ¶ 18. Because the DTSA's definition of ownership includes "equitable title," DKH's allegations are sufficient. 18 U.S.C. § 1839(4). The defendants contend that the assigned ownership allegation does not include the database, MTD at 7 (citing Am. Compl. ¶¶ 9–10), but later allegations, read in context, render it plausible that DKH "equitably

6

owned" the "database, software and source code" by assignment, Am. Compl. ¶ 29. *See Iqbal*, 556 U.S. at 678.

DKH also plausibly alleges that it "took reasonable steps to protect the secrecy" of the trade secrets. *RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1351 (M.D. Fla. 2019) (quoting *Audiology Distribution, LLC v. Simmons*, 812CV02427JDWAEP, 2014 WL 12620835, at *1 (M.D. Fla. Jan. 8, 2014)). DKH alleges that it required the software and source code to be kept in password-protected repositories, confined access to consultants, and expressed the need for secrecy. Am. Compl. ¶ 26. The defendants contend that DKH never alleges that Brooksher was told that the trade secrets "were confidential or could not be disclosed." MTD at 8. To the contrary, DKH explicitly alleges that "Brooksher was informed of the need for secrecy of the software . . . and was provided select passwords to access repositories for testing of the software." Am. Compl. ¶ 16.

The defendants next attack the amended complaint for failing to allege that the defendants had a confidential relationship with DKH and thus there cannot be a breach of that relationship. *See* MTD at 9–10. The "lack of any express agreement" is "not significant" because DKH alleges it informed Brooksher of the need for secrecy. *Dotolo*, 426 So. 2d at 1015 (finding that an implied confidential relationship imposed a duty to protect trade secrets where "[t]he appellees were instructed that the formula was a trade secret and that

the appellants wished to protect it"); *see Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1550 (11th Cir. 1996) (explaining that in Florida cases recognizing an implied confidential relationship, the party bringing the trade secret misappropriation claim "made it clear to the parties involved that there was an expectation and obligation of confidentiality").

The defendants also argue that the Copyright Act preempts the FUTSA claims. MTD at 10–11.[3] Preemption under the Copyright Act occurs if the rights at issue (1) "fall within the 'subject matter of copyright' set forth in sections 102 and 103" and (2) "are 'equivalent to' the exclusive rights of section 106." *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001) (quoting *Crow v. Wainwright*, 720 F.2d 1224, 1226 (11th Cir. 1983)). Regardless if the trade secrets are generally within the subject matter of copyright, the FUTSA claim survives because it satisfies the "extra element" test. Under that test, the Copyright Act does not preempt a state law claim "if the 'extra element' changes 'the nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Bateman*, 79 F. 3d at 1549 (emphasis in the original) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)). There is "no doubt that the Florida trade secret statute . . . satisfies the 'extra element' test" because the breach of duty requirement "qualitatively distinguishes" the claim from copyright

---

[3] The defendants lump both trade secret misappropriation claims together, but one federal statute obviously cannot preempt another.

infringement. *Id.* (quoting *Altai*, 982 F.2d at 717). Because DKH sufficiently alleges a breach of duty by Brooksher, the Copyright Act does not preempt the FUTSA claim.

### B. Count III: Computer Fraud and Abuse Act (CFAA)

The CFAA, in limited circumstances, provides a civil cause of action against anyone who "intentionally accesses a computer without authorization or exceeds authorized access," and causes loss by the unauthorized access. 18 U.S.C. § 1030(a)(2), (g). It defines the term "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the access[o]r is not entitled so to obtain or alter." *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (quoting § 1030(e)(6)). In other words, to exceed authorized access under the CFAA requires "obtain[ing] information located in particular areas of the computer—such as files, folders, or databases—that are off limits." *Van Buren*, 593 U.S. at 396.

DKH fails to plausibly state a claim under the CFAA. DKH alleges that Brooksher violated the CFAA by using his access to "copy[] and destroy[] confidential, proprietary and trade secret information." Am. Compl. ¶ 47. Brooksher's authorization included "access[ing] repositories for testing of the software," and he was given passwords to do so. *Id.* ¶ 16. Nowhere does DKH allege that Brooksher accessed areas of the accounts or repositories for which Brooksher did not have authorization. Alleging that one has an improper motive when accessing authorized areas fails as a matter of law to allege a

9

violation of the CFAA. *Van Buren*, 593 U.S. at 378 ("The CFAA does not cover those" with "improper motives for obtaining information [on a computer] that is otherwise available to them."). Taken as true, the allegations here do not lead to a plausible reading of a violation of the CFAA.

### C. Count IV: Conversion

"The elements of conversion [in Florida] are: 1) a taking of chattels; 2) with intent to exercise ownership over them an ownership inconsistent with the real owner's right of possession." *Hannah v. Malk Holdings, LLC*, 368 So. 3d 1087, 1091 (Fla. 6th DCA 2023). A plaintiff must allege sufficient facts to "establish that he was in possession of the goods, or entitled to possession, at the time of the conversion." *Nat'l Ventures, Inc. v. Water Glades 300 Condo. Ass'n*, 847 So. 2d 1070, 1073 (Fla. 4th DCA 2003) (quoting W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS, § 15, at 102–03 (5th ed. 1984)); *see Edwards v. Landsman*, 51 So.3d 1208, 1213 (Fla. 4th DCA 2011).

The conversion allegations suffice. The defendants argue that the complaint fails to allege "immediate possession." MTD at 13. But DKH alleges that the software and database "were DKH property," that DKH "has the absolute right to possession" of the software and database, and that the development of the software took place on DKH's servers. Am. Compl. ¶¶ 12–14, 21, 52–53. Therefore, taken as true, DKH's allegations of possession is enough to state a claim of conversion.

Although the conversion claim survives for now, the Copyright Act may preempt it and the FUTSA may displace it. The parties inadequately address these issues in the current briefing; they may raise the arguments later.

### D. Count V: Fraud

To establish fraud in Florida, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

Rule 9(b) is satisfied if the complaint alleges the "'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 (11th Cir. 1994)). "Rule 9(b)

11

must be read in conjunction with Rule 8(a)." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370–71 (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989). The purpose of Rule 9(b) is to "alert[] defendants to the 'precise misconduct with which they are charged.' " *Durham*, 847 F.2d at 1511 (quoting *Seville Indus. Mach. Corp.*, 742 F.2d at 791).

DKH's fraud allegations fall far short of the heightened pleading standard under Rule 9(b). The amended complaint alleges that Brooksher defrauded DKH by making "a series of false statements and material omissions of fact," and, "in particular, Brooksher misrepresented his intent in receiving access to the software and source code in development." Am. Compl. ¶ 58. DKH fails to identify what the alleged "statements" were, let alone plead them with any degree of particularity. *See* FED. R. CIV. P. 9(b). As a result, the allegations do not alert Brooksher of the "precise misconduct with which [he] is charged," and the claim must be dismissed. *Durham*, 847 F.2d at 1511 (quoting *Seville Indus. Mach. Corp.*, 742 F.2d at 791).[4]

### E. Count VI: Breach of Fiduciary Duty

To state a cause of action for breach of fiduciary duty, a plaintiff must allege: "1) existence of a fiduciary duty; 2) a breach of that duty; and 3) damage proximately caused by that duty." *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th

---

[4] The defendants raise other objections to the fraud claim. MTD at 15–17. But without knowing what statements or omissions DKH believes were fraudulent, I need not address them.

DCA 2022). The defendants do not identify a specific deficiency and cite no caselaw, relying on the factual dispute of whether Brooksher was Chief Technology Officer and Director of DKH and whether DKH owned the trade secrets. MTD at 17. But the amended complaint sufficiently alleges a breach of fiduciary duty, at least as to Brooksher.[5] *See* Am. Compl. ¶¶ 17, 23, 27, 39, 40, 65–66. At the motion to dismiss stage, the complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage*, 516 F.3d at 1284. Though the lack of an employment contract or other contractual obligation may defeat this claim at summary judgment or trial, DKH's allegations are adequate at this stage.

### F. Relief

In the prayer for relief, DHK asks for nearly every kind of legal and equitable remedy that an Article III court may award, but without identifying which count supports the remedy and against which defendant. Because DKH may amend its complaint one more time, DHK should improve the clarity of this section so that the defendants have proper notice. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020) (noting that the purpose of the pleading standard is to give defendants "fair notice of what the claim is and the grounds upon which it rests" (quoting *Twombly*, 550 U.S. at 555)).

---

[5] Count VI's allegations concern only Brooksher, so I construe the breach of fiduciary duty claim as one against him only.

IV. CONCLUSION

Accordingly, the following is **ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 21) is **GRANTED IN PART and DENIED IN PART.**

2. Counts III and V are **DISMISSED without prejudice**. Plaintiff DKH may file an amended complaint no later than **April 4, 2025**.[6]

3. No later than **April 11, 2025**, the parties must file an amended case management report.

**ORDERED** in Tampa, Florida, March 24, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge

---

[6] Counts III and V include allegations only against defendant Brooksher, not RJB.