UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELIVERY KICK HOLDINGS, INC.,

    Plaintiff,

v.                                                          Case No. 8:24-cv-1506-KKM-NHA

RJ BROOKSHER LLC, and
RILEY BROOKSHER,

    Defendants.
_____/

## ORDER

Plaintiff moves to compel Defendants' responses to seven requests for production of electronic files relating to the possession and transfer of the source code at the center of this litigation. Doc. 72. In response, Defendants request that the Court narrow the scope of three of the requests, and move for a protective order requiring that the material responsive to the remainder of the requests be made available to Plaintiff only via a computer hosted by a third-party escrow agent. Doc. 76. I grant Plaintiff's motion to compel, in part, and deny Defendants' motion for entry of a protective order.

    **I.**    **Background**

This case concerns a dispute over software currently in the possession of Defendant Riley Brooksher and his company, Defendant RJ Brooksher, LLC.

Plaintiff Delivery Kick Holdings, Inc. ("DKH") accuses Defendants of unlawfully taking and registering a copyright for a food delivery application that Plaintiff claims was developed by and belongs to its company and to Nicolas Kimball, the company's owner. *See* Second Amend. Compl., Doc. 58, pp. 1-5.

The nature and course of Kimball's and Defendant Brooksher's business relationship is hotly contested, but both parties agree that Defendant Brooksher worked as a consultant for Kimball or for Plaintiff DKH; that Defendant Brooksher and Kimball were in negotiations to co-own a food delivery app which one or both of them were developing; that Defendant Brooksher at some point decided he did not want to work with Kimball; and that Defendant Brooksher subsequently removed some amount of data or software from Defendant Brooksher's or Plaintiff DKH's Amazon Web Services (AWS) servers. *See* Defendant Brooksher Decl., Doc. 48-1, pp. 3-18. While Plaintiff argues that Brooksher removed "all copies of the software created for DKH" from its servers, *see* Kimball Decl., Doc. 12-1 ¶ 32, Defendant Brooksher asserts that DKH owned a separate piece of software (which Defendant Brooksher helped optimize but did not remove from Plaintiff's servers), and that Defendant Brooksher only removed backups of the software that he owned and created on his own time and his own computer, but which was backed up on DKH's servers. Doc. 48-1, ¶¶ 15, 32.

At issue in Plaintiff's disputed requests for production are requests for three categories of electronic materials relating to: (1) data, source code, software, and documents comprising the disputed food delivery app (Requests 6 and 14); (2) testing and optimization materials created by Defendants while Defendant Brooksher worked to optimize Plaintiff DKH's and/or Kimball's computer systems (Requests 8 and 11); and (3) the content of devices and accounts used to transfer digital materials removed from Plaintiff DKH's/Kimball's computer systems (Requests 15, 18, and 19).

    a. <u>Procedural History</u>

Discovery commenced in May of 2025. Doc. 76, p. 2. Plaintiff issued its First Requests for Production to Defendants on July 15, 2025. *Id.*, p. 3. Defendants responded with objections on August 14, 2025. *Id.*

Plaintiff filed the instant motion to compel on August 20 (Doc. 72), after which the parties worked to narrow the dispute. During conferral, the parties entered into a confidentiality agreement that protects some confidential materials, and that Plaintiff argues is sufficient to protect all confidential discovery materials. Doc. 75, ¶ 1. Defendants disagree. *Id.*

Currently at issue, and detailed further below, are: (1) Plaintiff's request to compel responses to Requests 8, 11, and 19, which Defendants argue are overbroad, and (2) Defendants' request for a Protective Order governing

3

productions responsive to Requests 6, 14-15, and 18-19. *See* Docs. 73, 76, 79, 82.

    b. The Overbreadth Objections

Plaintiff moves to compel responses to three requests that Defendants claim are overbroad and unduly burdensome. Two of these requests relate to Defendants' prior testing/configuration work for Plaintiff:

> 8. All documents related to the configuration, testing, or optimization of Plaintiff DKH's AWS servers, S3 buckets, SQL servers, or databases by any Defendant from December 2022 to June 2024; and
>
> 11. All documents related to the configuration, testing, or optimization of Nicolas Kimball's AWS servers, S3 buckets, SQL servers, or databases by any Defendant from December 2022 to June 2024, including configuration files and testing logs.[1]

Doc. 72, p. 5. The third request relates to devices Defendants used during the removal of electronic materials from Plaintiff's computers or servers:

> 19. Forensic images or copies of all devices, cloud accounts, or storage media (e.g., local drives, USB drives, personal cloud accounts) used by any Defendant to store, copy, or transfer data, software, source code, or databases from Nicolas Kimball's AWS servers, S3 buckets, SQL servers, or databases between December 2022 to the present.

---

[1] In describing the parties' computer systems and the materials therein, the discovery requests use technical terms. The Court is not an expert in computer science or web development, nor do the parties attempt to provide assistance in this regard (or even the instructions associated with their requests that might describe the terms) but the Court understands "AWS server" to mean a server provided by Amazon Web Service on which websites are built and hosted, "S3 bucket" to mean a digital data storage device also provided by AWS, and "SQL servers" to mean certain types of database management systems provided by Windows.

4

*Id.*, p. 8.

Defendants explain that they are willing to provide material responsive to Requests 8 and 11 – i.e., "configuration, testing and optimization documents" for Plaintiff DKH's and Kimball's servers – but that the "all documents related to" modifier on the requests renders them overbroad and disproportional to the case's needs. Doc. 76, p. 7. Defendants argue, by way of example, that internet history records related to configuration or testing of the servers would be covered by this category, but that such material is irrelevant to the parties' claims or defenses. *Id.*

Plaintiff maintains there is "nothing overbroad" about Requests 8 and 11 because they are "specific to the tasks performed by Defendants." Doc. 72, p. 6. Plaintiff does not specifically defend the "all documents related to" modifier, but states that it is seeking "documents for the configuration, testing or optimization of Plaintiff DKH's systems," arguing that, because Defendant Brooksher was hired for that very configuration and testing, those documents will reveal pertinent information about his relationship with and departure from Plaintiff DKH. *Id.*, pp. 5-6.

As to Request 19 (images and copies of data storage devices relating to the data transfer), Defendants argue that it is overbroad and calls for Defendants' trade secret information. *See* Doc. 76, pp. 4, 8. On the breadth and burden front, Defendants argue that "many if not all" of the devices and

5

accounts used to store or copy data from the servers also "contain data related to unrelated third parties and Defendant Brooksher personally that has nothing to do with this case," including personal communications and financial information. *Id.*, pp. 8-9. Plaintiff insists that it is entitled to the material described in Request 19 and that such material is not protected by the trade secret privilege (*see* Section I(c) of this order), but Plaintiff does not respond to Defendants' argument that Request 19 is overbroad.

    c. <u>The Source Code Discovery/Trade Secret Objections</u>

Defendants claim that the following five Requests (the "Source Code Discovery") seek trade secret information, and thus request that their production responsive to these Requests be governed by a protective order modeled after the U.S. District Court for the District of Delaware's "Default Standard for Access to Source Code" (Doc. 76-1):

> 6. All copies of data, software, source code, or databases accessed, copied, modified, or deleted by any Defendant from Plaintiff DKH's AWS servers, S3 buckets, or other repositories from December 2022 to the present, including any backups.
>
> 14. All documents related to any food delivery application or competing business venture developed by any Defendant from December 2022 to the present, including source code, business plans, marketing materials, or funding records.
>
> 15. Forensic images or copies of all devices, cloud accounts, or storage media (e.g., local drives, USB drives, personal cloud accounts) used by any Defendant to store, copy, or transfer Plaintiff DKH's data, software, source code, or databases from December 2022 to the present.

18. All backups or copies of data, software, source code, or databases from Plaintiff DKH's AWS servers, S3 buckets, SQL servers, or databases from December 2022 to the present, including any stored on personal or third-party systems.

19. Forensic images or copies of all devices, cloud accounts, or storage media (e.g., local drives, USB drives, personal cloud accounts) used by any Defendant to store, copy, or transfer data, software, source code, or databases from Nicolas Kimball's AWS servers, S3 buckets, SQL servers, or databases between December 2022 to the present.

Doc. 72, pp. 3, 6-8.

The parties agree that the Source Code Discovery is relevant. They disagree as to its privileged status. Plaintiff asserts that Defendants stole the material from Plaintiff and thus Defendants cannot claim the Source Code Discovery as *their* trade secrets. Doc. 72, pp. 2-3. Defendants reiterate their position that the application and associated Source Code Discovery were always theirs, and thus are Defendants' trade secrets. Doc. 76, pp. 5-6.

Defendants propose a protective order to govern productions responsive to these five requests, which would require that the material be provided on a stand-alone computer, provided by the Defendants and located with an "independent escrow agent," with costs of hosting the computer to be split between the parties. *See* Doc. 76-1. The stand-alone computer would be accessible only to two of Plaintiff's attorneys and two expert witnesses, and any copying or printing of the Source Code Discovery would require prior agreement from Defendants. *Id.*

7

Although Plaintiff has already agreed to Defendants producing the Source Code Discovery under a proposed confidentiality agreement which "provides for access being limited to attorneys and experts only" (Doc. 79, p. 3), Defendants argue that even allowing Plaintiff's attorneys and expert witnesses (characterized by Defendants as Plaintiff's "agents") to possess the material (as opposed to only *accessing* the material) would risk significant if not irreparable competitive harm to them. Doc. 76, pp. 5-6.

## II.   Legal Authority

The scope of discovery is construed liberally and favors disclosing possibly relevant information. *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021). But the scope of discovery is generally limited to that which is "proportional to the needs of the case," taking into account "whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Thus, "on motion or on its own, the court must limit the frequency or extent of discovery," if "the discovery sought is unreasonably cumulative or duplicative," or outside the scope of discovery. FED. R. CIV. P. 26(b)(2)(C).

Parties may request discovery of relevant electronically stored information. FED. R. CIV. P. 34(a). "Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations. Instead, Rule 34(a) allows a requesting party to inspect and to copy the product—whether it be a

8

document, disk, or other device—resulting from the respondent's translation of the data into a reasonably usable form." *In re Ford Motor Co.*, 345 F.3d 1315, 1316–17 (11th Cir. 2003).

When a party resists discovery on grounds that it is overbroad or unduly burdensome, the "party resisting discovery must show specifically how each question is overly broad, burdensome, or oppressive." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (alteration adopted) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985 (3d Cir.1982)).

Separately, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The party seeking a protective order carries the burden to demonstrate good cause, meaning it must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

Courts may issue protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." FED. R. CIV. P. 26(c)(1)(G). Once a party establishes that discovery is a trade secret that justifies a protective order, the court must evaluate the whether the there is good cause for the particular order proposed, including considering "[1] the severity and the likelihood of the

9

perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987) (quotation omitted). Additionally, Rule 26(c)'s good cause standard "requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).

### III. Analysis

#### a. Requests 8 and 11

The parties' dispute over Topics 8 and 11, which seek materials relating to Defendants' testing and configuration of Plaintiff DKH's and Kimball's servers, hinges on whether Defendant must produce "all documents related to" such testing.[2] Thus, the disagreement is not whether the testing documents themselves are relevant, but whether Defendants' production of all materials that relate to that testing—such as Defendants' internet history created during

---

[2] The full requests seek:
8. All documents related to the configuration, testing, or optimization of Plaintiff DKH's AWS servers, S3 buckets, SQL servers, or databases by any Defendant from December 2022 to June 2024.
11. All documents related to the configuration, testing, or optimization of Nicolas Kimball 's AWS servers, S3 buckets, SQL servers, or databases by any Defendant from December 2022 to June 2024, including configuration files and testing logs

10

the testing—would impose a burden on Defendants that outweighs the likely benefit of production. *See* FED. R. CIV. P. 26(b)(1).

Defendants affirm their willingness to produce what they describe as "configuration, testing, and optimization documents," but object that the Plaintiff's discovery requests, as phrased, seek both that category of relevant documents, and substantial amounts of irrelevant material. Doc. 76, pp. 7-8. Specifically, Defendants argue that complying with their good-faith interpretation of the requests would involve producing "hundreds of thousands of pages" of cloud configuration documents, as well as tutorial portals in Defendants' possession that provide instructions for database testing but that are irrelevant to the case. *Id.*

While the parties have essentially stipulated that the testing documents themselves are relevant and discoverable, Plaintiff has made no independent showing as to how the request for "all documents related to" the testing is designed to obtain material relevant to the parties' claims or defenses that would not be produced in response to a request without that modifier. Indeed, Plaintiff characterizes its own request as seeking essentially only what Defendants indicate they are willing to produce. *Compare* Motion, Doc. 72, p. 5 (describing Requests 8 and 11 as seeking "documents for the configuration, testing or optimization of Plaintiff DKH's systems") *with* Response, Doc. 76, p. 8 (requesting a limitation on Requests 8 and 11 to "configuration, testing, and

11

optimization documents"). Based on that interpretation, Plaintiff asserts that "there is nothing overbroad about this request, as it is specific to the [testing] tasks performed by Defendants." Doc. 72, p. 5.

Thus, it seems the documents Plaintiff seeks are narrower than those they request and are coextensive with those Defendants are willing to produce. So, to the extent Plaintiff's requests can be construed to demand more, Requests 8 and 11 are overbroad and unduly burdensome. *See Panola Land Buyers Ass'n*, 762 F.2d at 1559.

Having considered the parties' arguments and the applicable rules, the Court grants Plaintiff's motion to compel Defendants' production of materials responsive to Requests 8 and 11 to the extent they seek configuration, testing, and optimization documents for Kimball's and Plaintiff DKH's systems and servers.

    b. Request 19[3]

Defendants also assert that Request 19, which seeks forensic images or copies of all devices or accounts used to transfer data from Plaintiff's servers, is overbroad.[4]

---

[3] Though Request 15 appears to seek similar material, Defendants do not raise the objection, and so have waived the objection, with respect to Request 15. *See* Doc. 76, pp. 7-9.

[4] The full request seeks:
19. Forensic images or copies of all devices, cloud accounts, or storage media (e.g., local drives, USB drives, personal cloud accounts) used by any

12

Defendants agree they must produce materials taken from Plaintiff's and Kimball's servers, S3 buckets, SQL servers, or databases. But they argue that the devices and accounts associated with the transfers include personal and business devices and accounts that also contain personal and irrelevant information. Doc. 76, pp. 8-9. Specifically, Defendants explain that comprehensive forensic scans of the devices and accounts would contain Defendant Brooksher's photos, financial information, and private communications with third parties that are not relevant to this litigation. *Id.* Plaintiffs do not explain why they would be entitled to this excess information.

Defendants will be required to produce the material taken from Plaintiff's and Kimball's servers in response to Request 6. Plaintiff's do not explain why they would be entitled to the other information that would be contained in the requested forensic images. And, there appears to be no way for Defendants to produce "forensic images" of their devices without sharing *all* of the material on those devices. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013) ("A forensic copy is an exact copy of an entire physical storage media (hard drive, CD–ROM, DVD–ROM, tape, etc.), including all active and residual data and unallocated or slack space

---

Defendant to store, copy, or transfer data, software, source code, or databases from Nicolas Kimball's AWS servers, S3 buckets, SQL servers, or databases between December 2022 to the present.

13

on the media. Forensic copies are often called 'images' or 'imaged copies.'") (cleaned up) (citing the *Sedona Conference Glossary* at 23). Further, given that Request 6 will require Defendants to produce the materials transferred from Plaintiff's and Kimball's servers, "compelling the production of Defendants' devices or forensic images of those devices will subject Defendants to the burden of producing the same ESI in more than one form . . . a burden a party should ordinarily not have to bear." *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *7 (M.D. Fla. Oct. 25, 2013) (citing FED. R. CIV. P. 34(b)(2)(E)(iii)); *see also Teledyne Instruments, Inc.*, 2013 WL 5781274, at *7 ("Although forensic examination is a potential remedy, the ability to inspect an opposing party's computers or other electronic devices is by no means a matter of right.") (citing *In re Ford Motor Co.*, 345 F.3d at 1317).

For these reasons, the request for the forensic images is overbroad and unduly burdensome. I deny Plaintiff's motion to compel Defendants to produce material responsive to Request 19.

   c. <u>Requests 6, 14, 15, and 18</u>

Plaintiff seeks to compel responses to requests seeking Source Code Discovery. A protective order governing production is appropriate if the material at issue is a trade secret, *see Chicago Trib.* 263 F.3d at 1313–14 (discussing three factors to determine if a trade secret privilege exists), and the protective order is proportional and justified under the circumstances. *See In*

14

*re Alexander Grant & Co.*, 820 F.2d at 356 (discussing four factors to determine if a proposed protective order is justified).

No party disputes that the Source Code Discovery is a trade secret. Defendants and Plaintiff dispute only who rightfully owns the Source Code Material. This, however, goes to the heart of the case, and the Court declines the parties' invitation to use this limited and specific discovery dispute as a vehicle for adjudicating the ultimate issue. *See Beeman v. Protective Life Corp.*, 2020 WL 13656061, at *3 (N.D. Ala. Jan. 16, 2020) ("Courts generally refuse to impose substantial limits on discovery based on an examination of the merits of the action or the current state of the evidence, not all of which is often before the court.") (collecting cases).

Instead, and exclusively for the purposes of this motion, the Court assumes that Defendants may rightfully claim the trade secret privilege over the Source Code Material. The remaining question, then, is whether Defendants' Proposed Protective Order is justified in light of: 1) the severity and likelihood of the harm of disclosure, 2) the precision of the proposed order, 3) the availability of a less onerous alternative, and 4) the duration of the order. *See In re Alexander Grant & Co.*, 820 F.2d at 356.

Under the first factor-–-the severity and likelihood of the harm of disclosure-–Defendants imply that the harm of producing the material pursuant to an attorney's-and-expert's-eyes-only provision is that Plaintiff's

15

attorneys would convey the material to Plaintiff itself (in violation of the stipulated agreement) ultimately allowing Plaintiff to use the Material for its own purposes before or without winning its case against Defendants. *See* Doc. 76, p. 5 ("Kimball and his company, Plaintiff DKH, want possession and control of the RJB source code . . . Giving the source code to them, or their agents, would create significant harm."). This harm could be severe (though the Court notes Defendants' concerns about Plaintiff's access to the material did not prevent them from initially storing the material on Plaintiff's servers). But, the Court finds the potential harm unlikely, absent further basis for the accusation that Plaintiff's counsel would violate the Court's order and commit open and brazen discovery misconduct. Because the Court finds that the prospective harm could be significant but finds that the likelihood of it occurring is extremely low, this factor weighs against the imposition of Defendants' Proposed Protective Order.

The second factor—the precision of the Proposed Order—weighs in Defendants' favor. This is not a "blanket" protective order protecting yet-unspecified material, but one which applies to material responsive to five discovery Requests. This prong weighs in favor of the proposed protective order.

The Court examines third whether there is a less onerous alternative available. The Court finds that there is. Namely, Plaintiff proposes protecting

16

the Source Code Material with its proposed confidentiality agreement limiting access to the material to Plaintiff's attorneys and experts. Defendants' production pursuant to that proposal would preserve the resources that would otherwise be needed to coordinate and support the hosting of the material with an escrow agent. It would also allow Plaintiffs' experts and attorneys the opportunity to review the material when, how, and where they wish, which would certainly reduce the time and expense of review. The third factor weighs against the proposed protective order.

The fourth factor—the duration of the order—weighs in Defendants' favor. The Proposed Protective Order contemplates keeping the Source Code Material on a computer managed by an independent escrow agent for the duration of the discovery period.[5] So the duration of the order would be naturally constrained by the parties' need, and willingness to pay for, the escrow agent. The fourth factor weighs in favor of the proposed protective order.

In addition to the four *Alexander Grant & Co.* factors–which do not yield a clear victor-–-the Court weighs the parties' relative interests (the desire to protect a trade secret and the need to fairly litigate the case) and burdens

---

[5] To the extent parties wish to present aspects of the source code discovery at trial, Defendants note that the agreement permits copying or printing the source code upon agreement or court order. Doc. 76, p. 6.

17

pertaining to the discovery of the Source Code material (the considerable inconvenience of the proposed order when considered against alternative protective measures). *See Chicago Trib.*, 263 F.3d at 1313 (endorsing balancing the parties' interests in weighing whether good cause for a protective order exists).

Ultimately, the Defendant's proposed protective order is unnecessary and overly burdensome when compared to the alternative protective measures available to the parties.[6] Under the agreement already entered by the parties, only Plaintiffs' attorneys and experts, who shall be bound by court order against dissemination, will have access to the material, and the Court does not have any basis to suspect their misconduct or misappropriation. Of course, should any participant in this case violate a Court order, the Court will consider sanctions and may reconsider its ruling on this matter, if appropriate.

## IV.  Conclusion

It is hereby ORDERED:

1. Plaintiff's request to compel responses to Request Numbers 8 and 11 is GRANTED IN PART. Defendant must produce responses to the requests *as narrowed by this order* within 14 days of this order;

---

[6] The severe proposed access protocols also appear somewhat at odds with Defendants' prior storing of the material on Plaintiff's servers.

18

2. Plaintiff's motion to compel responses to Request Numbers 6, 8, 11, 14, 15 and 18 is GRANTED;

3. Plaintiff's motion to compel responses to Request Number 19 is DENIED;

4. Responses to Request Numbers 6, 8, 11, 14, 15, and 18, as well as any other appropriate material, will be governed by the parties' attorneys-and-experts-eyes-only agreement.

5. Defendants' request for entry of their Proposed Protective Order for the Source Code Material is DENIED.

ORDERED on November 26, 2025.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge